**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 23, 2025

# In the Court of Appeals of Georgia

A25A0170. LIFE CYCLE OB/GYN, LLC v. GILL.

HODGES, Judge.

Life Cycle OB/GYN, LLC appeals an order of the State Court of Clayton County denying its motion to dismiss a renewal action filed by Tabitha Gill, arguing that Gill failed to exercise the greatest possible diligence to serve it with process after the statute of limitation expired. We agree and, for the following reasons, we reverse.

At this stage, the facts of record in this case are sparse. On September 14, 2020, Gill sued Life Cycle for injuries she allegedly sustained in an October 4, 2018 slip-and-

fall at Life Cycle's Riverdale, Georgia office.[1] Gill voluntarily dismissed the original action without prejudice on February 17, 2023.

Gill then filed the present renewal action on August 16, 2023 — one day shy of the filing deadline. See OCGA § 9-2-61 (a) ("When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later[.]"). The next day, Gill's private process server attempted to serve Life Cycle through its registered agent, Anne Sigouin, at an office located at 2739 Felton Drive, East Point, Georgia; however, the process server was unsuccessful and noted that "THE BUILDING IS NOT OCCUPIED."[2] (Emphasis in original.) The process server then

---

[1] The statute of limitation for Gill's claim expired on October 4, 2020. See OCGA § 9-3-33 ("[A]ctions for injuries to the person shall be brought within two years after the right of action accrues[.]").

[2] The process server also served Guadalupe Gonzalez and Cindy Puac, two Life Cycle employees who were named as defendants in the renewal action but not in the original action. Life Cycle moved to dismiss Gonzalez and Puac, and Gill did not oppose the motion. As a result, the trial court dismissed Gonzalez and Puac in an October 2023 order.

attempted to serve Sigouin at 3545 Fairway Drive, College Park, Georgia — an address believed to be her residence — on August 22, and September 2, 2023 without success. Life Cycle filed a special appearance answer on September 12, 2023, raising the defense of insufficiency of service of process, after which Gill's process server made two more unsuccessful attempts to serve Sigouin at the College Park address on September 13 and 14, 2023.

After the unsuccessful September 14, 2023 service attempt, the record does not reveal any effort by Gill to serve Life Cycle until a December 13, 2023 attempt to serve Life Cycle's counsel of record at his office.[3] Life Cycle moved to dismiss Gill's complaint on December 5, 2023 due to Gill's failure to exercise the greatest possible diligence to serve Life Cycle after the statute of limitation expired. Following a

---

[3] Contemporaneously with her complaint, Gill filed a notice to depose Sigouin on November 1, 2023. In Gill's response to Life Cycle's motion to dismiss, Gill's counsel admitted that it was his intention to serve Sigouin with process at her deposition. However, as Life Cycle and Sigouin had never been served with process, her deposition did not take place.

In addition, the record indicates that Gill filed "copies of legal documents regarding service of process" with the Georgia Secretary of State on or about December 8, 2023, which the secretary of state acknowledged on December 15, 2023. See generally OCGA § 14-11-209 (f) (providing for manner of service of a limited liability company without a registered agent or "whenever its registered agent cannot with reasonable diligence be found at the registered office").

hearing, the trial court denied Life Cycle's motion, concluding that Gill "exercised the requisite diligence" and that she had "continuously sought to perfect service" as shown by "the August 17, 22, and September 2, 13, and 14 attempts" and her attempt "to secure . . . Sigouin's attendance at a deposition where she could perfect service[.]" The trial court also referenced Gill's attempts to serve the secretary of state and Life Cycle's counsel, specifically noting that the latter did "not constitute valid service, [but] nevertheless show[ed] that [Gill] was exploring available avenues to serve Life Cycle."

The trial court granted Life Cycle a certificate of immediate review, and we granted Life Cycle's application for interlocutory appeal. This appeal followed.

1. Life Cycle first contends that the trial court abused its discretion in denying Life Cycle's motion to dismiss because Gill failed to exercise the greatest possible diligence after learning of Life Cycle's insufficiency of process defense. We agree.

We start with our standard of review:

When reviewing a ruling on a motion to dismiss for insufficient service, a trial court's ruling will be upheld on appeal absent a showing of an abuse of discretion. And when an appeal from the denial of a motion to dismiss presents a question of law, we review the trial court's decision de novo.

4

(Citation and punctuation omitted.) *Henderson v. James*, 350 Ga. App. 361 (829 SE2d 429) (2019). It is axiomatic that "service of summons of process must be perfected as prescribed by law for the trial court to acquire jurisdiction over the person of the defendant to rule on the merits of the case." *South v. Montoya*, 244 Ga. App. 52, 53 (1) (537 SE2d 367) (2000); see generally OCGA § 9-11-4 (providing generally for methods of service of process). "OCGA § 9-11-4 (c) . . . directs that 'the person making such service shall make the service within five days from the time of receiving the summons and complaint[.]' . . . If service is made within the five-day grace period allowed by OCGA § 9-11-4 (c), it relates back to the date the complaint was filed as a matter of law." (Citation and punctuation omitted.) *Van Omen v. Lopresti*, 357 Ga. App. 9, 10 (2) (849 SE2d 758) (2020).

As a result,

[a]lthough a plaintiff must file [her] complaint within the applicable period of limitation, the law allows the same to be served beyond that applicable period. If the timely filing of the pleading is followed by timely service perfected as authorized by law, the subsequent service will relate back to the initial filing even though the statute of limitation has run in the interim.

5

(Citation and punctuation omitted.) *Van Omen*, 357 Ga. App. at 10 (2); see also *Giles v. State Farm Mut. Ins. Co.*, 330 Ga. App. 314, 317 (2) (765 SE2d 413) (2014) ("If the filing of the petition is followed by timely service perfected as required by law, although the statute of limitation runs between the date of the filing of the petition and the date of service, the service will relate back to the time of filing so as to avoid the limitation.") (citation and punctuation omitted). Accordingly, "where a complaint is filed near the statute of limitation and service is made after the statute expires and after the five-day safe harbor provision contained within OCGA § 9-11-4 (c), the relation back of the service to the date of filing is dependent upon the diligence exercised by the plaintiff in perfecting service." (Citation and punctuation omitted.) *Van Omen*, 357 Ga. App. at 10-11 (2). In cases where the statute of limitation has expired and the defendant has raised a service of process defense in a responsive pleading, "the standard of 'greatest possible diligence' in the context of assessing a plaintiff's attempts at service applies. . . ." *Van Omen*, 357 Ga. App. at 14 (2). To that end, a plaintiff

> bears the burden of proving that [she] obtained service as quickly as possible after the expiration of the limitation period. As the burden rests

on [her] to ensure diligent service, [she] must provide specific dates or details to show diligence and cannot rely on conclusory statements.

(Citation and punctuation omitted.) Id. at 15-16 (3).

Here, Gill filed her original action on September 14, 2020 — 21 days before the October 4, 2020 statute of limitation expired — and voluntarily dismissed her action without prejudice on February 17, 2023. Shortly after filing her renewal action on August 16, 2023, a private process server attempted to serve Life Cycle on August 17 and 22, and September 2, 2023 without success. Life Cycle filed a special appearance answer on September 12, 2023, raising the defense of insufficiency of service of process, thus triggering Gill's duty to exercise the greatest possible diligence to serve Life Cycle. See *Van Omen*, 357 Ga. App. at 14 (2). Gill's process server made two more unsuccessful attempts to serve Life Cycle's registered agent, at the same location as the prior unsuccessful attempts, on September 13 and 14, 2023.

What followed was a three-month span during which the evidence of record reveals no additional service attempts by Gill at all. In fact, it was not until Life Cycle's December 5, 2023 motion to dismiss that a flurry of activity ensued, including Gill's December 8, 2023 filing sent to the secretary of state and her December 13,

2023 attempt to serve Life Cycle's counsel during a deposition in an unrelated matter.[4] Moreover, the only explanation Gill offered for the three-month gap in service attempts — *after* the statute of limitation expired — was her counsel's statement at a hearing on Life Cycle's motion to dismiss that he "prepared for personal service on the registered agent" at her purported November 1, 2023 noticed deposition[5] and that he had been "putting [the] wheels in motion" to either serve Life Cycle's counsel or the secretary of state, although even these statements were short on details.

---

[4] From Gill's perspective, the triggering event for these additional attempts should have been the filing of Life Cycle's special appearance answer — *not* its motion to dismiss. Of course, we offer no opinion as to whether these additional attempts, had they been timely, would have constituted the greatest possible diligence in order to salvage Gill's renewal action.

[5] The notice to take Sigouin's deposition on November 1, 2023 was filed contemporaneously with Gill's renewal action in August 2023, which itself was never served, so no civil action was pending at the time of Sigouin's noticed deposition. See generally *Thorburn Co. v. Allied Media of Ga.*, 237 Ga. App. 800, 802 (1) (516 SE2d 833) (1999) ("A suit commences only after the filing of a petition and the proper service of process upon the defendant as required and authorized by law."). Moreover, Gill's counsel admitted that he was "waiting to do personal service" during the deposition; "waiting" to perfect service is the antithesis of the "greatest possible diligence" standard applicable in this case.

In sum, Gill "does not offer any explanation for the lack of action [from September to December 2023], and this [C]ourt has held that unexplained lapses of even shorter periods indicate a failure to pursue service in a reasonably diligent manner." (Punctuation omitted.) *Van Omen*, 357 Ga. App. 16 (3); see also *Parker v. Silviano*, 284 Ga. App. 278, 279-280 (1) (643 SE2d 819) (2007) (concluding that lapse of 18 days after complaint was filed and 10 days after the statute of limitation had run was unexplained, given only unauthenticated, hearsay evidence about service efforts, and supported dismissal for failure to make reasonable efforts to obtain service as quickly as possible); *Duffy v. Lyles*, 281 Ga. App. 377, 379-380 (636 SE2d 91) (2006) (reversing trial court's denial of motion to dismiss complaint where service was perfected six months after statute of limitation expired because plaintiff provided no evidence of diligence), overruled in part on other grounds in *Giles*, 330 Ga. App. at 317-321 (2) & 319 (2), n. 2.[6]

Despite this dearth of evidence of Gill's diligence, the trial court determined that Gill "continuously sought to perfect service" and "exercised the requisite diligence in this case." To reach its conclusion, the trial court relied upon Gill's

[6] Similarly, Gill's suggestion that Life Cycle was evading service is bereft of evidence.

notice of Sigouin's deposition, filed contemporaneously with Gill's complaint, which itself was never served; it also relied upon her notice to the secretary of state, sent after Life Cycle's motion to dismiss had been filed.[7] Under these circumstances, we conclude that, as a matter of law, Gill did not satisfy her burden to present evidence showing the greatest possible diligence — much less even reasonable diligence — in attempting to serve Life Cycle once Life Cycle raised the service of process defense in its special appearance answer. See *Van Omen*, 357 Ga. App. at 16 (3). Absent any evidence of Gill's exercise of the greatest possible diligence during the relevant time period to support its ruling, it follows that the trial court abused its discretion in denying Life Cycle's motion to dismiss Gill's complaint. See generally *Swearngin v. Rowell*, 356 Ga. App. 67, 71 (2) (846 SE2d 263) (2020) ("An abuse of discretion occurs where a ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law.") (citation and emphasis omitted). Therefore, we reverse the trial court's judgment.

2. In view of our decision in Division 1, supra, we need not consider Life Cycle's additional arguments that the trial court erred in concluding that Gill

---

[7] As a result, the trial court highlighted, rather than found satisfactory explanations for, the three-month gap in service attempts.

exercised reasonable diligence or that she did not properly serve Life Cycle through the secretary of state after Life Cycle filed its motion to dismiss.

*Judgment reversed. Pipkin, J., concurs; McFadden, P. J., concurs fully and specially.*

# In the Court of Appeals of Georgia

A25A0170. LIFE CYCLE OB/GYN, LLC v. GILL.

McFADDEN, Presiding Judge, concurring fully and specially.

I concur fully in the majority opinion. As a matter of law, the plaintiff did not exercise the greatest possible diligence in attempting to serve Life Cycle after September 14 (the last time she attempted personal service on the registered agent, which was two days after Life Cycle had raised the service-of-process defense in its special appearance answer). Instead, the plaintiff relied on the unfounded assumption that Life Cycle's registered agent could be served with process at a deposition on November 1 — even though neither the company nor the agent had been served. See OCGA § 9-11-30 (a) ("[a]fter commencement of the action, any party may take the

testimony of any person, including a party, by deposition"); *Thorburn Co. v. Allied Media*, 237 Ga. App. 800, 802 (1) (516 SE2d 833) (1999) ("A suit commences only after the filing of a petition and the proper service of process upon the defendant as required and authorized by law.")

I write separately to note that Life Cycle's failure to maintain a registered office and a valid address for its registered agent was a violation of OCGA § 14-11-209 (a) and should not be condoned. But that statute provided the plaintiff a remedy for this failure. OCGA § 14-11-209 (f) says that "whenever [a limited liability company's] registered agent cannot with reasonable diligence be found at the registered office, then the [s]ecretary of [s]tate shall be an agent of such limited liability company upon whom any process, notice, or demand may be served." So when the plaintiff learned on August 17, 2023, that Life Cycle's registered agent could not be found at the company's registered office, she could have availed herself of this remedy. Instead, she waited four months to serve the secretary of state.